# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before the Court Sitting *En Banc*

**UNITED STATES, Appellee**
v.
**Sergeant First Class MICHAEL S. MALONE, JR.**
**United States Army, Appellant**

ARMY 20230151

Headquarters, 1st Armored Division and Fort Bliss
Jessica R. Conn, Military Judge
Colonel Andrew D. Flor, Staff Judge Advocate

For Appellant: Major Robert D. Luyties, JA (argued); Lieutenant Colonel Autumn R. Porter, JA; Captain Matthew S. Fields, JA; Major Cody Cheek, JA (on brief); Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Major Mitchell D. Herniak, JA; Major Cody Cheek, JA (on reply brief); Colonel Philip M. Staten, JA; Lieutenant Colonel Autumn R. Porter, JA; Captain Amber L. Bunch, JA; Major Robert D. Luyties, JA (on supplemental brief and supplemental reply brief).

For Appellee: Captain Vy T. Nguyen, JA (argued); Colonel Christopher B. Burgess, JA; Lieutenant Colonel Jaqueline D. DeGaine, JA; Major Chase C. Cleveland, JA; Captain Vy T. Nguyen, JA (on brief); Colonel Richard E. Gorini, JA; Major Lisa Limb, JA; Captain Vy T. Nguyen, JA (on supplemental brief).

25 February 2025

```
-----------------------------------
OPINION OF THE COURT
-----------------------------------
```

POND, Chief Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of two specifications of disobeying a superior officer and three specifications of domestic violence in violation of Articles 90 and 128b, Uniform Code of Military Justice, 10 U.S.C. §§ 890 and 928b (2019) [UCMJ]. Per the plea

agreement,[1] the military judge sentenced appellant to a bad-conduct discharge, thirty months of confinement, and reduction to the grade of E-3.

This case is before the court for review under Article 66, UCMJ. Appellant's sole assignment of error is that his three domestic violence convictions under Article 128b, UCMJ are multiplicious. A panel of this court previously found appellant affirmatively waived his multiplicity challenge and affirmed. *United States v. Malone*, ARMY 20230151, 2024 CCA LEXIS 217 (Army Ct. Crim. App. 23 May 2024) (mem. op.). Appellant then requested this court to reconsider his case en banc, which we granted. For the reasons that follow, we find appellant did not affirmatively waive the error of multiplicity and further find appellant's Article 128b convictions are multiplicious. We provide relief in our decretal paragraph.[2]

## BACKGROUND

On the evening of 30 November 2022, an argument broke out between appellant and the victim, his girlfriend, in appellant's on-post house. Sometime after midnight, the victim attempted to call 911, after which appellant struck the victim in the face with his hand and then continued to strike her in the face, arm, shoulder, abdomen, and leg. Appellant then threw the victim to the ground, breaking her right clavicle.

At trial, appellant agreed to plead guilty to three specifications of domestic violence in violation of Article 128b, UCMJ:

Specification 1: In that [appellant . . . ] did... commit a violent offense against [victim], the intimate partner of the accused, to wit: by unlawfully striking her in the face with his hand.

Specification 3: In that [appellant . . .] did... commit a violent offense against [victim], the intimate partner of the accused, to wit: by

---

[1] Under the terms of the plea agreement, the government agreed to withdraw and dismiss one specification of assault consummated by battery, one specification of maiming, one specification of domestic violence, and one specification of obstruction of justice in violation of Articles 128, 128a, 128b, and 131b, UCMJ. The government also agreed to except certain words from one of the specifications of domestic violence to which appellant pleaded guilty. The dismissal of the pertinent charges was to ripen into prejudice upon completion of appellate review.

[2] We have also given full and fair consideration to the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

2

unlawfully striking her in the head, face, arm, shoulder, torso, and leg with his hand.

Specification 4: In that [appellant . . .] did... commit a violent offense against [victim], the intimate partner of the accused, to wit: unlawfully throw [victim] to the ground with his hand, and did thereby inflict substantial bodily harm, a broken clavicle.

As part of the plea agreement, appellant agreed to be sentenced separately for each specification, all to run concurrently. The plea agreement did not include a "waive all waivable motions" clause.

During arraignment, before appellant entered his pleas, the following exchange occurred:

Military Judge: [Appellant] how do you plead? Before receiving your plea, I advise you that any motions to dismiss or to grant other appropriate relief should be made at this time. Your defense counsel will speak for you.

Defense Counsel: Your Honor, the defense has no motions.

During the providence inquiry for Specification 1, appellant stated he and the victim had several verbal arguments that evening but that once the argument moved to the bedroom, he struck the victim in the face with his hand. Later when discussing Specification 3 with the military judge, appellant further explained:

Appellant: After I struck her in the face, I kept striking her with my hands. I hit her in the head, shoulder, arm, torso, and leg while I struck her.
...

Military Judge: So, this was all part of the same event that happened in Specification 1 of Charge I; is that correct?

Appellant: Yes, Your Honor.

Military Judge: So, after you struck her in the face, about how much time passed before you began to hit her over other parts of her body?

Appellant: It continued, Your Honor.

Next, when discussing Specification 4, appellant stated, "After striking her several times all over her body, I pushed her hard with both hands. She fell

backwards and hit the ground hard." The military judge again inquired into the temporal relationship to the other assaults:

> Military Judge: And was this all part of the same transaction that you've been talking to me about?
>
> Appellant: Yes, ma'am.
>
> Military Judge: This happened right after you hit her all over her body?
>
> Appellant: Yes, ma'am.

Before ending the providence inquiry, the military judge again asked about the time frame of the conduct in Specification 4:

> Military Judge: This was also in conjunction with her being hit all over her body already?
>
> Appellant: Yes, ma'am.

The colloquy also revealed all three domestic violence specifications occurred on the same night and in the same general area of the home. Appellant stated he first struck the victim in the master bedroom. When asked where he was in the master bedroom when he first hit her, appellant stated, "It was transitioning from the master bedroom into the master bathroom; right in that area." There is no further discussion during the providence inquiry or in the stipulation of fact of the assaults occurring anywhere else. Also, the stipulation of fact refers to the entire incident simply as "the assault."

The military judge accepted appellant's plea to all three domestic violence offenses, as well as the other offenses to which appellant pleaded guilty. Consistent with the terms of the plea agreement, the military judge sentenced appellant to twenty months of confinement for Specification 1, twenty-six months of confinement for Specification 3, and thirty months of confinement for Specification 4. The military judge ordered all sentences to run concurrently. She also sentenced appellant to be reduced to the grade of E-3 and imposed, as required by the plea agreement, a bad-conduct discharge.[3]

---

[3] The military judge also accepted appellant's plea to two specifications of disobeying a superior officer and sentenced him to 10 days of confinement for the first offense and 15 days of confinement for the second, also to run concurrently with the other terms of confinement.

Appellant argues on appeal that his domestic violence convictions are multiplicious and this court should merge all three specifications into a single specification and reassess his sentence. We agree.

## LAW AND DISCUSSION

### A. Affirmative Waiver versus Forfeiture

We must first determine whether appellant affirmatively waived his claim that the three domestic violence specifications are multiplicious, or whether he merely forfeited it.

We review whether an issue is waived de novo. *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020). Rule for Courts-Martial 907(b)(3) provides when a specification is multiplicious, it "may be dismissed upon timely motion by the accused." Rule for Courts-Martial 905(b)(2) states one of the objections that "must be raised before a plea is entered" is any objection "based on defects in the charges or specifications" except for any failure to show jurisdiction or failure to charge an offense, which "shall be resolved by the military judge at any time during the pendency of the proceedings." At the time of appellant's court-martial, subsection (e)(1) of R.C.M. 905, provided: "Failure by a party to raise defenses or objections or to make motions or requests which must be made before the pleas are entered under subsection (b) of this rule forfeits the defenses or objections absent an affirmative waiver." *Manual for Courts-Martial, United States* (2019 ed).[4]

The Court of Appeals for the Armed Forces (CAAF) reiterated the difference between waiver and forfeiture, stating: "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." *Davis*, 79 M.J. at 331 (quoting *United States v. Gladue*, 67 M.J. 311, 313 (C.A.A.F. 2009) (internal quotations omitted). Thus, this court may "review forfeited issues for plain error," but "'we cannot review waived issues at all because a valid waiver leaves no error for us to correct on appeal.'" *Id.* (quoting *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009)).

Relevant to our analysis is the particular right at stake. *See e.g., United States v. Harcrow*, 66 M.J. 154 (C.A.A.F. 2008) ("Whether a particular right is waivable; whether the defendant must participate personally in the waiver; whether certain procedures are required; and whether the defendant's choice must be

---

[4] In a previous version of the rule, R.C.M. 905(e) provided, "Failure by a party to raise defenses or objections or to make motions or requests which must be made before pleas are entered under subsection (b) of this rule shall constitute waiver." *See Manual for Courts-Martial, United States* (2012 ed). In contrast to the current rule, this older version omitted any reference to the word "forfeit" and used "waiver" rather than "affirmative waiver."

particularly informed or voluntary, all depend on the right at stake."). Here, appellant raises multiplicity, which is grounded in "constitutional and statutory restrictions against Double Jeopardy." *United States v. Quiroz*, 55 M.J. 334 (C.A.A.F. 2001) (citing U.S. Const. amend. V and Article 44(a), UCMJ, 10 U.S.C. § 844(a)).

A criminal defendant may intentionally waive constitutional protections to include those afforded by the Double Jeopardy Clause. *Gladue*, 67 M.J. at 314. But appellate courts, when faced with the question of whether an appellant has waived a constitutional right, apply a presumption against finding waiver. *United States v. Blackburn*, 80 M.J. 205, 209 (C.A.A.F. 2020) (citing *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018)). Thus, when an appellant raises a claim of multiplicity for the first time on appeal, courts review for plain error unless the appellant has waived the issue. *United States v. Heryford*, 52 M.J. 265, 266 (C.A.A.F. 2000) (court determined whether specifications were multiplicious under plain error when raised for the first time on appeal). This holds true even in guilty pleas. *Id. see also United States v. Lloyd*, 46 M.J. 19, 20 (C.A.A.F. 1997) (where appellant plead guilty unconditionally, and in the absence of express waiver or consent, the court applied plain error to appellant's multiplicity claim raised for the first time on appeal).

In this case, the record – to include the pretrial proceedings, the providence inquiry, the plea agreement, and stipulation of fact – fails to show appellant affirmatively waived his claim of multiplicity. Turning first to the plea agreement, the terms made no reference to multiplicity or acknowledgement of whether the specifications were multiplicious. While appellant agreed to concurrent sentences for each specification, this alone is not sufficient for this court to find waiver of appellant's constitutional right against multiplicious convictions. Concurrent sentencing is a remedy for unreasonable multiplication of charges, which has sometimes been conflated with multiplicity but is a separate doctrine, not grounded in the Constitution but is rather a presidential policy prohibiting prosecutorial overreaching. *See United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012); *Gladue*, 67 M.J. at 314; R.C.M. 1002(d)(2)(B)(iii). While a judge may order concurrent sentencing for charges that are unreasonably multiplied, in contrast, the remedy for multiplicity is "dismissal of the multiplied offense." *Campbell*, 71 M.J. at 23. Thus, even with a term mandating concurrent sentencing, appellant would still stand convicted of the multiplicious offenses, contrary to the intent of the Double Jeopardy Clause.

The plea agreement also did not include a provision that appellant agreed to "waive all waivable motions." Such a provision would have prompted the military judge to discuss that term with appellant to ensure he understood the effect of the

term of his plea agreement as required by R.C.M. 910(f)(4).[5] *See also Gladue*, 67 M.J. at 311. In *Gladue*, the appellant agreed to "waive all waivable motions" in his pretrial agreement. *Id.* at 312. While discussing this provision with appellant, the military judge did not explicitly discuss multiplicity. *Id.* at 313. The judge, however, discussed other types of motions and "conducted a detailed, careful, and searching examination of Appellant" to make certain he understood the effect of the provision. *Id.* at 314. The appellant in *Gladue* then "explicitly indicated" he understood "he was giving up the right to make *any* motion which by law is given up when you plead guilty." *Id.* (internal quotations omitted) (emphasis in original). In that case, our superior court found the appellant had waived any multiplicity claim. *Id.*

In contrast to *Gladue*, there is nothing in the record to indicate this appellant understood he was affirmatively giving up his right to make motions. During arraignment, the military judge advised only that any motions to dismiss should be made, not what would happen if such motions were not made. During providence, while appellant made several remarks indicating the domestic violence specifications involved a single transaction and continuous course of conduct, there is no indication in the record appellant was aware of the implication of his statements. The military judge never clarified with appellant nor the parties whether the plea agreement contemplated multiplicity or whether appellant had discussed the issue of multiplicity with counsel and was knowingly relinquishing any protections against multiplicious convictions to secure the benefit of his plea deal. Had the military judge taken a moment to inquire, the intent of the parties would have been clear on the record. We neither approve nor disapprove of the use of a "waive all waivable

---

[5] The rule entitled *"Plea agreement inquiry,"* provides "[t]he military judge *shall* inquire to ensure: (i) that the accused understands the agreement; and (ii) that the parties agree to the terms of the agreement." R.C.M. 910(f)(4) (emphasis added). "If there is doubt about the accused's understanding of any terms in the agreement . . . the military judge should explain those terms to the accused." R.C.M. 910(f)(4), Discussion. The plea agreement inquiry "is part and parcel of the providence of an accuser's plea, and necessary to ensure that an accused is making a fully informed decision as to whether or not to plead guilty." *United States v. Hunter*, 65 M.J. 399, 403 (C.A.A.F. 2008) (internal citation omitted). "[A]n inquiry that falls short of these requirements and fails to ensure the accused understands the terms of the agreement is error." *Id.* (internal citation omitted). Thus, the Military Judge's Benchbook advises, "The military judge must discuss each provision in a plea agreement with the accused and ensure that (1) the accused understands the agreement, and (2) the parties agree to the terms of the agreement." Dep't of the Army, Pam. 27-9, Legal Services: Military Judges' Benchbook, para. 2-2-8 (29 Feb. 2020). It also provides that "Special attention must also be given to terms that purport to waive motions." *Id.*

motions" provision.[6] We merely note a term like a "waive all waivable motions" provision in this case would have served as a catalyst for further discussion with the military judge as required by the Rules for Court-Martial.

We also find inadequate the defense counsel's pro forma statement, following the military judge's request for appellant's plea, that "defense has no motions." This, too, fails to demonstrate waiver of appellant's multiplicity claim. Arguably, this language does not sound that different from a defense counsel stating "no objection" to proposed panel instructions which our superior court has held constituted waiver. *See United States v. Rich*, 79 M.J. 472, 475-76 (C.A.A.F. 2020) (finding affirmative waiver of instructional error where defense counsel stated they "did not have other objections or suggested changes to the proposed instructions"); *Davis*, 79 M.J. at 331 (finding waiver when defense "affirmatively declined to object to the military judge's instructions and offered no additional instructions"). But there is at least one significant distinction. In *Davis* and *Rich*, the appellant *knew* what the proposed findings instructions were and the substance of those instructions. Therefore, when defense counsel said, "no objection," appellant *knew* the content and scope of what he was not objecting such that his decision was knowing, intelligent and therefore, deliberate.[7] In contrast, the statement "defense has no motions" does not adequately reflect that appellant knew by pleading guilty, he was intelligently and voluntarily giving up the right to make motions.

Contrary to the dissent, our distinguishing of these cases does not imply a new requirement that an appellant must know the full content and scope in order to affirmatively waive an objection or error. As shown by cases such as *Gladue, Davis,* and *Rich*, we do not believe the law requires an appellant to have absolute and perfect knowledge of the content or scope of a right to effectively waive it. Like waiving a privilege, the holder of the right needs to possess only sufficient knowledge to make his waiver knowing and intelligent. *See e.g., United States v.*

---

[6] For instance, a "waive all waivable motions" provision may not adequately address the requirement for a military judge to inform the accused of the right to assert the statute of limitations in bar of trial if it appears the accused is unaware of that right as required by R.C.M. 907(b)(2)(B).

[7] For similar reasons, we find the dissent's reliance on *United States v. Cunningham*, 83 M.J. 367 (C.A.A.F. 2023) also unpersuasive. There, the military judge asked the parties, after the presentation of sentencing arguments, if there were any objections, to which both parties answered "no." Our superior court held defense counsel's response constituted "an express waiver, obviating the need to address the issue of improper sentencing argument." *Id.* at 374. Like *Davis* and *Rich*, the appellant in *Cunningham* knew to what he was not objecting such that his decision was knowing and deliberate.

8

*Jasper*, 72 M.J. 276, 281 (C.A.A.F. 2013) (finding the privilege holder did not have to know how the privileged statements were going to be used for the waiver to be knowing and voluntary, only that they knew they were disclosing the communications to someone outside the privilege). In *Davis,* the appellant might not have contemplated every possible objection he could have raised to the proposed instructions, but the appellant saw what the instructions were before they went to the panel, such that he knew to what he was "expressly and unequivocally acquiescing." *Davis*, 79 M.J. at 331 (internal citations omitted). Similarly, in *Gladue*, when discussing the terms of the plea agreement, the military judge did not specifically address waiver of a motion for multiplicity in his colloquy with the appellant, but the record reflected through that discussion that the appellant knew enough about the consequences of the terms of his plea agreement to constitute waiver. 67 M.J. at 314. In contrast, there is nothing in this record to reflect this appellant knew anything at all.

While an unconditional guilty plea will by operation of law waive many issues, multiplicity is not one of them when the error is plain and obvious. *See e.g.*, *Lloyd*, 46 M.J. at 22, 24 ("a guilty plea does not foreclose or relinquish consideration of all legal issues, particularly double jeopardy claims, which can be decided on the basis of facts apparent on the face of the record."); *see also United States v. Pauling*, 60 M.J. 91, 94 (C.A.A.F. 2004). In contrast, our superior court has held an unconditional guilty plea waives a claim of unreasonable multiplication of charges. *See United States v. Hardy*, 77 M.J. 438, 443 (C.A.A.F. 2018). Previously in this case, a panel of this court relied, in part, on *Hardy*, to find appellant affirmatively waived multiplicity here. *United States v. Malone*, ARMY 20230151, 2024 CCA LEXIS 217, at *10-11 (Army Ct. Crim. App. 23 May 2024) (mem. op.).

We find *Hardy* inapplicable to appellant's case for several reasons. First, *Hardy* did not address multiplicity but rather waiver of unreasonable multiplication of charges. *Hardy*, 77 M.J. at 443. And unlike multiplicity, unreasonable multiplication of charges is not grounded in the Constitution but is a presidential policy. *See Gladue*, 67 M.J. at 313-14 (citing *United States v. Weymouth*, 43 M.J. 329, 335 (C.A.A.F. 1995)). Second, *Hardy* acknowledged "some exceptions" to the general principle that an unconditional guilty plea waives nonjurisdictional defects, citing *United States v. Pauling*, 60 M.J. 91, 94 (C.A.A.F. 2004). *Hardy*, 77 M.J. at 442. In *Pauling*, the court held a guilty plea does not waive a multiplicity issue when the offenses are "facially duplicative." 60 M.J. 91. Third, *Hardy* was applying a much different version of R.C.M. 905(e), *see supra* note 6. The President later amended R.C.M. 905(e), effective 1 January 2019, to provide that a failure to raise an objection or motion "forfeits" that objection or motion absent a waiver that must be "an affirmative waiver." *Hardy*, 77 M.J. at 439 n.2 (citing Exec. Order. No. 13,825, 83 Fed. Reg. 9889 (8 Mar. 2018)).

9

Moreover, on the issue of waiver, we find the additional cases cited by the dissent to be unpersuasive. In *United States v. Vogan*, 27 M.J. 882, 884 (A.C.M.R. 1989), the court was reviewing whether two separate charges – wrongful possession and use of false identification cards on one hand, and violation of a general regulation on the other – were multiplicious for sentencing. As discussed, *infra*, multiplicity for sentencing has often been conflated with multiplicity but is not the same. *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012). Rather, it is a superseded term best encapsulated by unreasonable multiplication of charges. *Id.* Thus, *Vogan* was not addressing the multiplicity aimed at protecting against double jeopardy, at issue here. Similarly, in *United States v. Jones*, 23 M.J. 301, 303 (C.M.A. 1987), the underlying facts are significantly different. There, the court determined that because the defense counsel failed to request that the larceny specification be made more specific – so that the charge might be "fairly embraced" by the forgery offense – that this failure was fatal to appellant's claim for relief. Setting aside that our superior court later abandoned the "fairly embraced" test upon which this decision in part relied, *see United States v. Teters*, 37 M.J. 370 (C.A.A.F. 1993), the court in *Jones* denied relief because the specifications as written on the charge sheet did not meet the court's test for multiplicity at the time. In contrast, here, and as we discuss further in the next section, appellant's specifications as written on the charge sheet are multiplicious on their face. The dissent further argues that we are upending well-considered and reliable waiver principles. To the contrary, we are merely applying our superior court's precedent.

To that end, we do not believe any specific language is required to find waiver; however, given the presumption against waiver of constitutional protections, and the plain language of R.C.M. 905(e), there must be some affirmative evidence in the record indicating a deliberative choice by appellant prior to finding waiver of his multiplicity claim. Finding none, we decline to find affirmative waiver in appellant's case.

### B. Multiplicity

Having found that appellant did not affirmatively waive but merely forfeited his claim of multiplicity, we next address whether appellant has met his burden of showing plain error. *Heryford*, 52 M.J. at 266. To prevail under plain error review, appellant must demonstrate: "(1) there was error, (2) the error was plain and obvious, and (3) the error materially prejudiced a substantial right of the accused." *United States v. Jones*, 78 M.J. 37, 44-45 (C.A.A.F. 2018) (internal citation and quotation omitted). "Where the error is constitutional . . . the government must show that the error was harmless beyond a reasonable doubt to obviate a finding of prejudice." *United States v. Tovarchavez*, 78 M.J. 458, 462 (C.A.A.F. 2019).

The Double Jeopardy Clause "prohibits multiple punishments 'for the same offen[s]e'" and thus, "'multiplicious prosecutions . . . . [i.e.,] when the government charges a defendant twice for what is essentially a single crime.'" *United States v.*

10

*Forrester*, 76 M.J. 479, 484-85 (C.A.A.F. 2017) (quoting the U.S. Const. amend. V) (other citations omitted). This constitutional protection prohibits different "species" of multiplicity. *Id.* at 485. In one instance, it "precludes a court, contrary to the intent of Congress, from imposing multiple convictions and punishments *under different statutes* for the same act or course of conduct." *United States v. Coleman*, 79 M.J. 100, 102 (C.A.A.F. 2019) (government charged appellant's firing of a Smith and Wesson .40 caliber handgun at another soldier's car as both willfully discharging a firearm under circumstances to endanger human life and attempted murder) (citation omitted) (emphasis added). To that species of multiplicity, courts apply the elements test set forth in *United States v. Blockburger*, 284 U.S. 299 (1931). *Id.* at 102-03. Another instance of multiplicity is "when charges for multiple violations *of the same statute* are predicated on arguably the same criminal conduct." *Forrester*, 76 M.J. at 485 (appellant challenged his convictions for four specifications of possessing child pornography under Article 134, UCMJ) (citations and internal quotations omitted) (emphasis in original). It is this latter type of multiplicity at issue here.

Where appellant is charged for multiple violations of the same statute, appellant can demonstrate plain error "by showing that the specifications are 'facially duplicative,' that is factually the same." *Heryford*, 52 M.J. at 266 (quoting *Lloyd*, 46 M.J. at 23). To determine whether specifications are factually duplicative, courts look to the "language of the specifications and 'facts apparent on the face of the record.'" *Id.* "Whether two offenses are facially duplicative is a question of law that we will review de novo." *Pauling*, 60 M.J. at 94.

To begin our inquiry, we must address an initial question of the allowable unit of prosecution, "which is the *actus reus* of the defendant." *Forrester*, 76 M.J. at 485 (where an appellant is charged for multiple violations of the same statute, the court "must first determine the 'allowable unit of prosecution.'") (citations and internal quotations omitted). To determine the allowable unit of prosecution, we must look to the statute to discern Congress's intent. *United States v. Szentmiklosi*, 55 M.J. 487, 491 (C.A.A.F. 2001). "Unless a statutory intent to permit multiple punishments is stated 'clearly and without ambiguity,' doubt will be resolved against turning a single transaction into multiple offenses." *Id.* (quoting *Bell v. United States*, 349 U.S. 81, 84 (1955)). "If it is a continuous-course-of-conduct offense as a matter of law, a separate conviction for each . . . component" or act committed "during the course of conduct might not be authorized." *United States v. Neblock*, 45 M.J. 191, 197 (C.A.A.F. 1996) (citing *United States v. Universal C.I.T. Credit Corp.*, 344 U.S. 218 (1952)). On the other hand, if the offense is a "distinct or discrete-act offense, separate convictions are allowed in accordance with the number of discrete acts." *Id.* at 197 (internal citations omitted).

The government charged appellant with three specifications of domestic violence by committing a violent offense under Article 128b, UCMJ. The President

11

has defined a "violent offense" as a violation of specific articles of the UCMJ, to include Article 128, which encapsulates both assault by battery and aggravated assault. Exec. Order 14,062, 87 Fed. Reg. 4736 (Jan. 26, 2022). Article 128(a), UCMJ, defines assault as the unlawful attempt, offer, or act of bodily harm to another person with force or violence. 10 U.S.C. § 928(a). Article 128(b), UCMJ, defines aggravated assault, in part, as committing an assault thereby inflicting substantial bodily harm. 10 U.S.C. § 928(b). Military courts have consistently "'held that Congress intended assault, as prescribed in Article 128, UCMJ, 10 U.S.C. § 928, to be a continuous course-of-conduct-type offense and that each blow in a single altercation should not be the basis of a separate finding of guilty.'" *United States v. Clarke*, 74 M.J. 627, 628 (Army Ct. Crim. App. 2015) (quoting *United States v. Flynn*, 28 M.J. 218, 221 (C.M.A. 1989)); *see also United States v. Morris*, 18 M.J. 450 (C.M.A. 1984); and *United States v. Rushing*, 11 M.J. 95 (C.M.A. 1981).

Upon first read, it may appear some of these previous cases were using the two doctrines of unreasonable multiplication of charges and multiplicity interchangeably. And perhaps, they were. For example, in *Morris*, the court found appellant's "multiplicious" offenses "f[ell] squarely" within the paragraph of the 1969 Manual which provided "one transaction, or what is substantially one transaction, should not be made the basis for an unreasonable multiplication of charges against one person." 18 M.J. at 450. Those previous cases also relied upon whether "the acts were so united in time, circumstance, and impulse in regard to a single person as to constitute a single offense." *Rushing*, 11 M.J. at 98. Yet, our superior court, while later clarifying the distinction between unreasonable multiplication of charges and multiplicity, stated that terms such as "a single impulse or intent," "unity of time" and "connected chain of events" are "terms [that] do not derive from the traditional legal test for multiplicity found in *Blockburger* and *Teters*" but rather "describe the sort of factors in *Quiroz*" used when determining whether the charges are unreasonably multiplied. *Campbell*, 71 M.J. at 24 (referring to *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932) and *United States v. Teters*, 37 M.J. 370 (C.A.A.F. 1993) previously cited by the court in that opinion). This raises the question of whether Article 128, UCMJ, remains a continuous-course-of-conduct offense. We find that it does.

First, the allowable unit of prosecution is a question that is relevant to both multiplicity and unreasonable multiplication of charges. *See Forrester*, 76 M.J. at 485. And courts have used a multiplicity analysis in examining the second *Quiroz* factor – whether each charge and specification is aimed at distinctly separate criminal acts – to determine whether the charges have been unreasonably multiplied. *See id.* (comparing *United States v. Paxton*, 64 M.J. 484, 491 (C.A.A.F. 2007)); *see also United States v. Baker*, 14 M.J. 361, 367 (C.M.A. 1983) (in determining whether offenses were unreasonably multiplied, the court looked to whether offenses were greater or lesser offenses or were part of a continuous course of conduct

prohibited by one statutory provision). Thus, cases will often analyze both doctrines simultaneously. *See e.g., Forrester*, 76 M.J. at 484-487.

Second, the Supreme Court in *Blockburger*, a pivotal case on multiplicity, used "single impulse" as a factor in determining Congress's intent in distinguishing between a continuous-course-of-conduct offense (necessitating one charge) and an offense consisting of an isolated or discrete act (resulting in as many charges as there are acts). 284 U.S. at 303. There, the Supreme Court found sales of a narcotic to the same person at different times constituted separate and distinct offenses "however closely they may follow each other" because each arose from a separate impulse. *Id.* at 302-03 ("the first transaction, resulting in a sale, had come to an end. The next sale was not the result of the original impulse, but a fresh one"). If there is one impulse, there can only be one indictment "no matter how long the action may continue." *Id.* at 302 (quoting Wharton's Criminal Law, 11th Edition, § 34) (internal quotations omitted). But if there are "successive impulses" that "are separately given, even though all unite in swelling a common stream of action," the government may charge each act separately. *Id.*[8] Similarly, our superior court has looked to the specific intent to distinguish assaults with an intent to commit specific offenses, now found in Article 128(c), UCMJ, and have looked to the duration of the specific intent required for the commission of the offense. *Flynn*, 28 M.J. at 221 (finding assault with intent to commit rape not multiplicious with assault with the intent to commit sodomy).[9]

Finally, as appellant argued during oral argument, despite the language in *Campbell*, our superior court has not overruled its previous decisions holding assaults are a continuous course-of-conduct offense. And Congress has not revised Article 128, UCMJ, in such a way to show an overriding intent. "When Congress has the will it has no difficulty in expressing it – when it has the will, that is, of defining what it desires to make the unit of prosecution." *Bell*, 349 U.S. at 83.

---

[8] The "single impulse" test is applicable when Congress's intent is unclear in determining the allowable unit of prosecution in cases where an accused is charged with different acts under the same statute. To clarify, the "single impulse" test is separate and distinct from the "same-conduct" test which the Supreme Court overruled in *United States v. Dixon*, 509 U.S. 688 (1993), affirming the *Blockburger* elements test where respondents were indicted under different criminal provisions.

[9] We note that both assault consummated by a battery and aggravated assault are general intent crimes, rather than specific intent crimes. Thus, when the government charges multiple specifications of assault consummated by a battery or aggravated assault, the question is whether each violation arises from a separate or a single impulse or were otherwise separated by time and circumstance.

Thus, assaults under paragraph (a) and (b) of Article 128, UCMJ, are a continuous course of conduct offense. When an assault, charged under either of those paragraphs, is "an uninterrupted attack comprising touchings 'united in time, circumstance, and impulse,'" the allowable unit of prosecution "is the number of overall beatings the victim endured rather than the number of individual blows suffered." *Clarke*, 74 M.J. at 628 (citing *Rushing*, 11 M.J. at 98 (distinguishing assaults under Article 120, UCMJ, and specialized assaults then under Article 134, UCMJ). Because Article 128b, UCMJ, subsumes the elements of Article 128, UCMJ, in defining "a violent offense," this unit of prosecution also applies to the three domestic violence specifications of which appellant was convicted.

Applying the allowable unit of prosecution in this case, all three domestic violence specifications are facially duplicative. All three specifications allege the same date, location, and victim. Specifications 1 and 3 recite the same facts – striking the victim's face with appellant's hand. While the specifications may not be verbatim, the providence inquiry conducted by the military judge made clear that each arose from an uninterrupted attack orchestrated by appellant. Appellant consistently and unequivocally averred in his providence inquiry the misconduct in Specifications 1, 3, and 4 were all part of one continuous assault – all part of the same transaction – each act occurring immediately after the other. Appellant, upset at the victim, struck her face, before moving to other areas of her body. Appellant admitted during his providence inquiry, "After I struck her in the face, I kept striking her with my hands. I hit her in the head, shoulder, arm, torso, and leg while I struck her." When describing throwing the victim to the ground, appellant stated, "After striking her several times all over her body, I pushed her hard with both hands. She fell backwards and hit the ground hard." We reject the government's contention that there was a meaningful break, either in location, time, or impulse that would make the specifications separate and distinct "beatings."

As an alternative remedy, the government urges us to consolidate only Specifications 1 and 3, the domestic violence by assaults consummated by battery, while leaving, unadulterated, Specification 4, domestic violence by aggravated assault. While the government would have been required to prove an additional element to carry its burden for Specification 4 – i.e., that appellant inflicted substantial bodily harm – in analyzing this "species" of multiplicity where the charges are under the same statute, the mere inclusion of an additional element is not sufficient to render Specification 4 unique from the others. As we have already discussed, the aggravated assault was part of the same uninterrupted altercation as the other specifications, united in time, location, and impulse. The unit of prosecution is the altercation, not the individual blows.

Here, appellant has met his burden under a plain error review. There was error as the specifications were multiplicious. The error was plain and obvious as the three specifications are facially duplicative, demonstrated on both the charge

sheet and through appellant's providence inquiry. Finally, the error materially prejudiced appellant's constitutional rights against Double Jeopardy.

*C. Reassessment*

Having determined the domestic violence specifications are multiplicious, we find the specifications should be consolidated into a single violation of Article 128b, UCMJ, and the remaining multiplicious specifications should be dismissed. Contrary to the dissent, we do not find that our remedy, which would affect the authorized maximum punishment, renders appellant's plea improvident. A guilty plea may be improvident if it is based on an accused's "substantial misunderstanding" of the maximum punishment allowed. *United States v. Mincey*, 42 M.J. 376, 378 (C.A.A.F. 1995) (citations omitted). There is, however, no "mathematical formula" to determine what constitutes a "substantial misunderstanding." *Id.* The military judge advised appellant that the maximum punishment authorized based upon his plea alone was reduction to E-1, total forfeiture of all pay and allowances, confinement for 23 years, and a dishonorable discharge. The consolidation of the affected specifications would have reduced the maximum confinement to 16 years, all other punishments remaining the same, to include the 10 years maximum confinement for appellant's two convictions of willfully disobeying a superior commissioned officer. We also note that per appellant's plea agreement, the military judge was required to adjudge all terms to confinement to run concurrently and that the maximum sentence to confinement appellant faced under the agreement was for one of the three domestic violence offenses (Specification 4 of Charge I) for which the military judge could adjudge at most 32 months confinement. Considering all the circumstances of the case, we conclude that any change in the maximum punishment authorized does not render appellant's plea improvident.[10]

Given the remedy of dismissing the multiplicious specifications, we must determine whether our "broad discretion" allows us to reassess appellant's sentence instead of ordering a rehearing. *United States v. Winckelmann*, 73 M.J. 11, 12 (C.A.A.F. 2013). Based on our experience as judges on this court, and with the aid of a confinement sentence segmented by the military judge for each specification as well as the concurrent sentences appellant received, we are confident that even with the dismissal of two specifications, the military judge would have imposed at least a bad-conduct discharge, thirty months of confinement, and reduction to the grade of E-3.

---

[10] We also note that appellant has not raised this as an assignment of error.

## CONCLUSION

Upon consideration of the entire record, Specifications 1, 3, and 4 of Charge I are merged into a consolidated specification, numbered as Specification 4 of Charge I, to read as follows:

> In that [appellant], U.S. Army, did, at or near Fort Bliss, Texas, on or about 1 December 2022, commit a violent offense against ███████, the intimate partner of the accused, to wit: by unlawfully striking her in the head, face, arm, shoulder, torso, and leg with his hand, and by unlawfully throwing ████████ to the ground with his hand, and did thereby inflict substantial bodily harm, a broken clavicle.

The finding of guilty to Specification 4 of Charge I, as consolidated, and Charge I is AFFIRMED. The findings of guilty to Specifications 1 and 3 of Charge I are SET ASIDE and those specifications are DISMISSED. The remaining findings of guilty are AFFIRMED. The corresponding segmented sentences to confinement for the now dismissed Specifications 1 and 3 of Charge I are also SET ASIDE. Reassessing the sentence, the segmented sentence to confinement for Specification 4 of Charge I is AFFIRMED, and the sentence to a bad-conduct discharge, thirty months of confinement, and reduction to the grade of E-3 is AFFIRMED.[11]

Senior Judge FLEMING, Judge MORRIS, Judge JUETTEN, Judge COOPER, Judge PARKER[12], and Judge SCHLACK concur.

ARGUELLES[13], Judge, with whom Judge PENLAND joins, dissenting,

I respectfully disagree with the majority's conclusion that appellant has not waived his multiplicity challenge to Specifications 1, 2, and 4 of Charge I ("domestic violence specifications"). To the contrary, I would find that because appellant has affirmatively waived his multiplicity challenges to the domestic violence specifications, there is no error for us to correct on appeal.

---

[11] Although Block 21 of the Statement of Trial Results properly reflects that the military judge credited appellant with 92 days of pretrial confinement credit, Block 23 of the Statement of Trial Results incorrectly states appellant was entitled to zero "Total Days of Credit." Block 23 of the Statement of Trial Results, as incorporated into the Judgment of the Court, is hereby amended to reflect "92 Days." See Rule for Courts-Martial [R.C.M.] 1111(c)(2).

[12] Judge PARKER decided this case prior to her retirement.

[13] Judge ARGUELLES decided this case while on active duty.

Moreover, even if the majority is correct that appellant did not affirmatively waive his multiplicity challenge, I also respectfully disagree with the consolidation remedy imposed by the majority.

*A.  Affirmative Waiver*

As part of his written plea agreement, which both he and his counsel signed, appellant agreed to plead guilty to the three domestic violence specifications at issue in this case.  Appellant also agreed that as part of his plea agreement he would receive *separate* sentences for each of the three specifications.  The military judge thoroughly discussed the plea agreement with appellant, confirming that he understood all of its terms and how they affected his case.

Prior to the entry of pleas, defense counsel affirmatively stated on the record that appellant was not raising any motions to dismiss:

Military Judge: [Appellant] how do you plead? Before receiving your plea, I advise you that any motions to dismiss or to grant other appropriate relief should be made at this time. Your defense counsel will speak for you.

Defense Counsel: Your Honor, the defense has no motions.

In addition, after establishing with appellant on the record that the domestic violence specifications were "all part of the same event" and "part of the same transaction," the military judge asked counsel whether they believed "any further inquiry" was necessary.  Defense counsel did not raise any concerns about multiplicity or otherwise ask the military judge for additional clarification, but instead responded, "No, your honor."

In essence, although appellant now claims that the military judge committed "plain and obvious" error in accepting his guilty pleas to the three separate domestic violence specifications, appellant and his counsel deliberately not only failed to raise any such concerns during the trial below, but indeed at two different points affirmatively stated that they had no motions for relief and that no additional clarification was necessary on the factual basis for the specifications.

Rule for Courts-Martial [R.C.M.] 907(b)(3) provides that a specification for multiplicity "may be dismissed upon timely motion by the accused . . . ."  Rule for Courts-Martial 905(b)(2) states that any defense objection based on defects to the charges or specifications "must be raised before a plea is entered."  Finally, R.C.M. 905(e)(1) states that the failure of a party to make a motion or objection before the entry of pleas "forfeits the objection absent an affirmative waiver."  Our standard of

17

review for whether an issue is waived is de novo. *United States v. Davis*, 79 M.J. 329, 331 (C.A.A.F. 2020).

As the majority correctly points out, the Court of Appeals for the Armed Forces (CAAF), its predecessor Court of Military Appeals (CMA), and this court have all held that although a failure to make a timely motion to dismiss will generally constitute waiver of any multiplicity claims, such claims are only forfeited if they rise to the level of plain error. *See, e.g. United States v. Heryford*, 52 M.J. 265, 266 (C.A.A.F. 2000) (citing *United States v. Britton*, 47 M.J. 195, 198 (C.A.A.F. 1997); *United States v. Herd*, 29 M.J. 702, 708 (A.C.M.R. 1989) (holding that where charges are multiplicious on their face, the issue is preserved for appeal despite the failure to object at trial). On the other hand, there is also a long line of precedent recognizing that if an appellant affirmatively waives his multiplicity claim, it is unreviewable on appeal. *See, e.g. United States v. Vogan*, 27 M.J. 882, 884 (A.C.M.R. 1989) ("Based on these facts, we hold that the defense counsel affirmatively waived the foregoing issue of multiplicity for sentencing."); *United States v. Jones*, 23 M.J. 301, 303 (C.M.A. 1987) (holding that a failure to move that a charge be made more specific is fatal to an appellate claim of multiplicity); *United States v. Lloyd*, 46 M.J. 19, 23 (C.A.A.F. 1997) (holding that express waiver forecloses any inquiry into whether specifications are multiplicious or facially duplicative)

The majority relies in large measure on *United States v. Gladue*, wherein the CAAF held that a "waive all waivable motions" clause precludes an appellant from asserting a multiplicity challenge on appeal. 67 M.J. 311, 314 (C.A.A.F. 2009). The CAAF in *Gladue* did not, however, either implicitly or explicitly hold that absent such a clause, an appellant could never waive his right to challenge multiplicity. To the contrary, in *United States v. Hardy*, the CAAF expressly held that while a waive all waivable motions clause might be sufficient to constitute waiver, the absence of such a clause does *not* foreclose waiver. 77 M.J. 438, 443 (C.A.A.F. 2018). *Cf. United States v. Chin*, 75 M.J. 220, 223 (C.A.A.F. 2016) (holding that a waive all waivable motions provision is "a factor" for a service level appellate court to weigh in determining whether to disapprove a finding or sentence); *United States v. Conley*, 78 M.J. 747, 752 (Army Ct. Crim App. 2017) (finding waiver even in the absence of a waive all waivable motions clause).

In two seminal decisions in 2020, the CAAF broadened the scope of waiver. First, in *Davis* the CAAF reiterated the difference between waiver and forfeiture: "Waiver is different from forfeiture. Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the intentional relinquishment or abandonment of a known right." 79 M.J. at 331 (citing *Gladue*, 67 M.J. at 313). After explaining all of the instructions he intended to give, the military judge in *Davis* asked if defense counsel had any objections or requests for additional instructions, to which

18

counsel responded "No changes, sir," and "No, your honor." *Id.* at 330. Rejecting appellant's forfeiture claim, the CAAF held that:

> Appellant did not just fail to object and thereby merely forfeited his claim. He affirmatively declined to object to the military judge's instructions and offered no additional instructions. By "expressly and unequivocally acquiescing" to the military judge's instructions, Appellant waived all objections to the instructions . . . .

*Id.* at 331. "Consequently, while we review forfeited issues for plain error, 'we cannot review waived issues at all because a valid waiver leaves no error for us to correct on appeal.'" *Id.* (citing *United States v. Campos*, 67 M.J. 330, 332 (C.A.A.F. 2009)).

Addressing the same issue, the CAAF in *United States v. Rich* held that "[w]hile there are no 'magic words' dictating when a party has sufficiently raised an error to preserve it for appeal, of critical importance is the specificity with which counsel makes the basis for his position known to the military judge." 79 M.J. 472, 475 (C.A.A.F. 2020) (internal quotation marks and citations omitted). Likewise, the CAAF held that while "[a] forfeiture is basically an oversight; a waiver is a deliberate decision not to present a ground for relief that might be available in the law." *Id.* (citing *Campos*, 67 M.J. 330, 332).

To the extent the majority focuses on the fact that multiplicity is a "constitutional" error, it is first worth nothing that neither *Rich* nor *Davis* implicitly or explicitly limited their waiver analysis to constitutional errors. Moreover, and in any event, the failure to provide correct and complete instructions also constitutes a constitutional error. *See, e.g. United States v. McDonald*, 57 M.J. 18, 20 (C.A.A.F. 2002) (holding that the test for determining whether the failure to give a required instruction is the constitutional harmless error standard).

The majority concedes, as it must, that the colloquy found to constitute waiver in *Davis* and *Rich* "does not sound that different" from defense counsel's affirmative statement in this case that he did not have any motions. But, in an effort to get around the obvious impact and applicability of the CAAF's holdings in *Davis* and *Rich*, the majority imposes a new and additional element into the waiver analysis: the requirement that the record must clearly indicate that appellant affirmatively knows the exact "content and scope" of what he is specifically giving up when his counsel says "no objection" or "no additional motions."

First, because the CAAF has never either explicitly or implicitly adopted the majority's requirement, the majority is improperly narrowing and limiting our superior court's precedent. *See United States v. Allbery*, 44 M.J. 226, 228 (C.A.A.F. 1996) ("In the absence of a superseding statute or an intervening decision of this

Court or the Supreme Court of the United States, [CAAF precedent] was absolutely binding on the Court of Criminal Appeals."). Such a requirement is also inconsistent with the general principle that "even without such an express representation, it may be appropriate to presume that in most cases defense counsel routinely explain the nature of the offense in sufficient detail to give the accused notice of what he is being asked to admit." *Henderson v. Morgan*, 426 U.S. 637, 647 (1976).

Moreover, and in any event, the analysis and holding of both *Davis* and *Rich* are at odds with any argument that the CAAF intended to impose an "affirmative knowledge" requirement into the waiver analysis. In *Davis*, appellant claimed for the first time that it was plain error for the military judge to instruct the panel that lack of consent was an element of an indecent recording charge, without also specifying that he must have subjectively known the alleged victim did not consent. 79 M.J. at 330. Because his counsel did not request the additional subjective knowledge instruction at trial, but rather told the military judge he had "no changes" and "no objections" to the instructions, the CAAF held that appellant's claim was waived. *Id.* Even though there was no indication in the record that at the time of trial appellant had any idea that his lawyer was giving up his right to argue that the offense at issue required him to subjectively know the victim did not consent, that did not preclude the CAAF from finding waiver.

Likewise, although in *Rich* there was some discussion early in the case about whether the defense would be requesting a mistake of fact instruction, the military judge did not include such an instruction in his packet of proposed instructions, and the defense likewise did not ultimately submit or request such an instruction. 79 M.J. at 474-75. Once again, notwithstanding that there was no evidence in the record that appellant ever saw or was aware of what constituted the mistake of fact instruction, defense counsel's response that he had no objections to the instructions constituted a waiver of appellant's claim that the military judge erred in failing to give the instruction. *Id.* at 477.

More recently, the CAAF extended its holdings in *Davis* and *Rich* beyond the jury instruction context. Specifically, in *United States v. Cunningham*, 83 M.J. 367, 374 (C.A.A.F. 2023), the CAAF held that when defense counsel responded "no" to the military judge's question as to whether there were any sentencing argument objections, such a response constituted an "express waiver, obviating the need to address the issue of improper sentencing argument." As in both *Davis* and *Rich*, the CAAF in *Cunningham* did not in any way ground its waiver determination on affirmative evidence in the record that appellant knew exactly what he was giving up when his lawyer told the military judge there were no objections. *See also United States v. Lindor*, 83 M.J. 678, 683 (Army Ct. Crim. App. 2023) (defense counsel's response that he had no objection to the stipulation of fact waives any objection to its contents).

Applying precedent set forth in *Davis, Rich,* and *Cunningham* to this case, appellant did not merely "fail to object" to any multiplicity defects in the domestic violence specifications. To the contrary, when defense counsel told the military judge he had no motions to dismiss, and affirmatively stated that no additional clarification was needed for the factual basis, those were "deliberate decision[s]" not to challenge what appellant is now claiming are "plainly erroneous" specifications. Indeed, given the significant benefits the plea agreement conferred upon appellant, it is not surprising that his counsel chose not to unwind it by raising his multiplicity challenge prior to the entry of pleas. Specifically, if defense counsel had successfully made such a motion when directly asked to do so by the judge, the merger of the domestic violence specifications into one specification would have left appellant unable to fulfill a "material promise or condition" of his plea agreement by pleading guilty to *three* domestic violence specifications. This in turn would have triggered the clause in the agreement allowing the convening authority to withdraw and proceed to trial on *all* of the charges and specifications.

It does not serve the ends of justice to allow appellant to "sandbag" the process by deliberately declining to make a multiplicity challenge at a time when the convening authority could still withdraw from the agreement, and instead wait to raise such a challenge for the first time on appeal, after he has reaped all of the benefits and the convening authority can no longer withdraw. *See United States v. Cook*, 12 M.J. 448, 455 (C.M.A. 1982) ("Justice would not be served by such an outcome, nor could such a result have been contemplated by the parties when they entered into the pretrial agreement."); *United States v. Sanchez*, 81 M.J. 501, 506 (Army Ct. Crim. App. 2021) ("Securing a favorable pretrial agreement via a guilty plea, and then on appeal attacking the facial legality of one of the specifications, is inconsistent with the fair and efficient administration of justice."). This is especially true given that appellant is now contending that the domestic violence specifications at issue were so facially defective as to constitute plain error.

As an aside, even if the majority's requirement that the record demonstrate that an accused knows the exact content and scope of his waiver were the law, which it clearly is not, that standard would still be satisfied in this case. Appellant knowingly entered into a written plea agreement in which he agreed to plead guilty, and receive separate sentences, for each of the three domestic violence specifications. In addition, appellant admitted during his colloquy with the military judge that all three offenses were "part of the same event" and "part of the same transaction." As such, while appellant may or may not have been aware of the legal term "multiplicity," he was clearly on notice and willingly entered into an agreement that required him to plead guilty to three separate domestic violence offenses all arising from a single incident.

Finally, although not directly applicable to this case, it is worth noting that recent amendments to the Rules for Courts-Martial (R.C.M.) track the CAAF's

broadening of the definition of waiver. Specifically, the 2019 version of R.C.M. 910(j) provided:

> *Waiver.* Except as provided in paragraph (a)(2) of this rule, a plea of guilty which results in a finding of guilty waives any objection, whether or not previously raised, insofar as the objection relates to the factual issue of guilt of the offense(s) to which the plea was made.

Effective 28 July 2023, amended Rule 910(j) greatly expands the scope of waiver for guilty pleas:

> *Waiver.* Except as provided in paragraph (a)(2) of this rule, a plea of guilty that results in a finding of guilty waives any objection, whether or not previously raised, as to the factual issue of guilt of the offense(s) to which the plea was made *and any non-jurisdictional defect as to the offense(s)* to which the plea was made that occurred prior to the plea."

R.C.M. 910(j) (emphasis added).[14] The discussion to the amended rule confirms that "other errors with respect to the plea inquiry or acceptance of a plea under this rule are subject to waiver if not brought to the attention of the military judge." Put simply, had the trial in this case occurred after July of 2023, under R.C.M. 910(j), appellant's guilty plea would bar his non-jurisdictional multiplicity objections with no further discussion or analysis required.

### B. Implicit Concession of No Multiplicity Error

During the trial the parties agreed, and the military judge informed appellant, that his maximum sentence based on his guilty plea was a reduction to the grade of E1, total forfeiture of all pay and allowances, confinement for twenty-three years, and a dishonorable discharge.[15]

In *Hardy* the CAAF held that "[a]s a practical matter, a UMC [unreasonable multiplication of charges] objection must be raised before the accused enters a guilty plea because the objection may affect the maximum sentence that the court martial

---

[14] Rule for Courts-Martial 910(a)(2), the exception to the rule, pertains to conditional plea agreements, in which appellant expressly preserves the right to appeal the adverse determination of a specific pretrial motion.

[15] It appears that the breakdown of the maximum total confinement of twenty-three years was as follows: three years and six months each for Specifications 1 and 3 of Charge I, six years for Specification 4 of Charge I, and five years each for the two Article 90, UCMJ specifications to which appellant also pleaded guilty as part of his plea agreement.

may impose." 77 M.J. at 442. The CAAF explained that the military judge cannot inform an accused of the maximum sentence as required by R.C.M. 910(c)(1) "if a UMC objection later will result in a merger of the specifications." *Id.* As such, the CAAF held that if an accused agrees with trial counsel's recitation of the maximum sentence before entering his guilty pleas, as is the case here, he or she "implicitly concedes that there is no UMC objection because the remedy for such an objection would affect the maximum sentence." *Id.* at 441-42.

While there is a slight difference between a UMC objection and a multiplicity objection, the above-cited holding and logic of *Hardy* appears to apply with equal force in the present context, where appellant seeks a post-trial merger of domestic violence specifications, notwithstanding the fact that he expressly agreed to a maximum sentence based in part on *three* separate specifications. But, because *Hardy* was a UMC case, the CAAF did not have the occasion to apply this logic to a multiplicity case. Nor did it address the inherent conflict between any such application and its prior precedent allowing an appellate challenge to "facially duplicative" multiplicious specifications, even when entered as part of a guilty plea.

While there is a strong argument that the logic and holding of the more recent *Hardy* decision trumps any previously recognized multiplicity exception, I acknowledge that only our superior court can overrule its own precedent and as such respectfully request the CAAF resolve this apparent discrepancy between *Hardy* and its prior precedent. *See United States v. Tovarchavez*, 78 M.J. 458, 465 (C.A.A.F. 2019) ("[I]t is for this Court, not the ACCA, to overrule our precedent.") (citations omitted); *Allbery*, 44 M.J. at 228 (holding if a service level appellate court believes the underlying logic of one of the CAAF's decisions has changed, its recourse is "to express that viewpoint and to urge our reconsideration of our precedent").

*C. Remedy*

As noted above, appellant agreed that his plea agreement subjected him to a maximum punishment that included twenty-three years in custody. The majority's remedy to merge and consolidate the three domestic violence specifications into one specification, thereby reducing the maximum possible penalty by seven years, renders his pleas improvident. *See United States v. Harden*, 1 M.J. 258, 259 (C.M.A. 1976) ("A plea of guilty may be improvident because it is 'predicated on a substantial misunderstanding on the accused's part of the maximum punishment to which he is subject.'") (citations omitted); *United States v. Hunt*, 10 M.J. 222, 224 (C.M.A. 1981) (holding that all the circumstances of the case must be considered to determine whether the misapprehension of the sentence affected the guilty plea) citing *United States v. Walls*, 9 M.J. 88 (C.M.A. 1980).

Put another way, under the logic and holding of *Hardy* as described above, even if appellant's agreement to be subject to a maximum sentence of twenty-three

years does not constitute outright waiver of his multiplicity claims, at a minimum the parties' misapprehension of the maximum penalty raises significant providency issues. Among other things, the military judge never had the opportunity to discuss with appellant how any such reduction might impact his desire either to enter into the agreement in the first instance or remain bound by the new terms.

As part of his written plea agreement, appellant agreed that the convening authority could withdraw if "findings are set aside because my plea of guilty, entered pursuant to this agreement, is held improvident on appellate review." Likewise, R.C.M. 705(e)(4)(B) provides:

> The convening authority may withdraw from a plea agreement at any time before substantial performance by the accused of promises contained in the agreement . . . or if *findings* are set aside because a plea of guilty entered pursuant to the agreement is held improvident on appellate review.

In short, under the plain language of R.C.M. 705(e)(4)(B), once findings have been set aside as improvident, as is the case here, the convening authority may withdraw from the plea agreement and proceed anew on both the withdrawn charges and specifications, as well as those to which appellant entered improvident guilty pleas at the first trial. *United States v. Stout*, No. ARMY 20120592, 2018 CCA LEXIS 174 at *8-9 (Army Ct. Crim. App. 9 Apr. 2018) (mem. op.), *aff'd on other grounds* 79 M.J. 168 (C.A.A.F. 2019). As our sister court recently held:

> [I]n cases involving a plea agreement, and depending on the terms of the plea agreement, successfully challenging a plea as improvident on appeal can have the same effect as if the military judge had not accepted the plea in the first place, which is often an express basis for cancellation of the agreement. The plea agreement in this case contains a similar provision in the event Appellant failed to plead guilty. But it also contains an express provision allowing the Government to withdraw from the plea agreement "if [the] findings are set aside because a plea of guilty is held improvident on appellate review."

> Setting aside the findings and sentence places the parties in exactly the position contemplated by Rule for Courts-Martial 705(e)(4), where both parties may now withdraw from the plea agreement or elect to proceed under the previous agreement.

*United States v. Moore*, 84 M.J. 695, 702-03 (N.M. Ct. Crim. App. 2024). *See also Cook*, 12 M.J. at 455 n.11 ("In the unusual case, where the accused succeeds on appeal in getting his guilty plea vacated, we see no reason to strain the spirit of an agreement to benefit one party, when that party has caused the other to lose its benefit of the bargain.").

As such, even if the majority is correct that appellant did not affirmatively waive his multiplicity claims, the correct remedy is not to merge and consolidate the domestic violence specifications, but rather to set aside the findings and sentence to allow the convening authority either to withdraw from the plea agreement and proceed to trial or elect to proceed under a new agreement.

PENLAND, Judge, with whom Judge ARGUELLES joins, dissenting,

On one hand, I am tempted to commend the majority's effort to synthesize what has become a complex web of multiplicity jurisprudence; they have obviously put in significant work on that topic. But, as intriguing as their analysis might be, I am more deeply convinced appellant does not deserve it. He affirmatively waived the issue.

If words have meaning, then what is meant by, "Your Honor, the defense has no motions."?[16, 17] Counsel did not say something like, "I really haven't thought about motions," or, "I'm not sure what a motion is." In my view, the only reasonable interpretation of this record is that the defense thought about motions that might apply – constitutional or otherwise – and decided not to bring them. Otherwise, the defense counsel was asleep at the switch; considering appellant has not alleged ineffective assistance of counsel, I am sure that is not the case. Instead, I am convinced trial defense counsel was aware of the multiplicity issue and decided not to pursue it.

The majority has upended well-considered and reliable waiver principles which our superior court has established for our and the field's application. These principles are not merely important for their own sake; they guide military judges' and (especially defense) counsel's work in virtually every trial or guilty plea. So, when a defense counsel in tomorrow's Army court-martial says, "No objections," to the admission of government evidence, will that still constitute waiver – as it should? Or, for waiver to apply, will the military judge be required to convene an interlocutory session to question counsel – and accused – about their understanding of the scope and content of potential legal arguments against that evidence (or stipulation, or instructions)?

Before this decision, the answers to those important questions were well-settled, and cases proceeded accordingly. The majority incorrectly disturbs that foundation and in doing so underwrites the prospect of a vexatious promise to "waive all waivable motions." The majority disclaims approval or disapproval of

---

[16] Appellate defense counsel failed to mention this material fact in their initial brief to this court.

[17] What the majority characterizes as "pro forma" was anything but.

MALONE — ARMY 20230151

such a provision in plea agreements, while advising it "would have served as a catalyst" for a meaningful exchange between the military judge, counsel, and the accused. I acknowledge the "waive all waivable" term frequently appears in plea agreements reviewed by this court; as an older practitioner I recall when it became somewhat *de rigueur* around the turn of the century. In my view, this tautological commitment has not grown less confusing over the years, *Gladue* notwithstanding. With all respect to our superior court, the following excerpt from that case illustrates the problem with trying to clarify its effect at trial:

> [A]fter the military judge conducted a detailed, careful, and searching examination of Appellant to ensure that he understood the effect of the PTA provision, Appellant explicitly indicated his understanding that he was giving up the right to "to make *any* motion which by law is given up when you plead guilty."

*United States v. Gladue*, 67 M.J. 311, 314 (C.A.A.F. 2009). This passage indicates *Gladue* understood the agreed promise as a surplus restatement of the principle that a guilty plea waives most motions by operation of law. If that is all the phrase was intended to mean, then it would not seem to encompass waiver of a multiplicity motion, because of the related principle that a guilty plea cannot waive it *per se*.

The majority's logic in distinguishing *Davis* and *Rich* is also unavailing, particularly its tacit assessment that an appellant is better situated to understand the contents and meaning of instructions, such that "no objections" means waiver there, while an appellant is less able to understand the contents and meaning of a charge sheet. In virtually every case, an appellant has far more time to study a preferred charge sheet (usually brief) than proposed panel instructions (frequently prepared and reviewed in the midst of trial).

I respectfully dissent and would affirm the findings and sentence, giving plain meaning to counsel's declaration of "no motions."

FOR THE COURT:

// JAMES W. HERRING, JR.
Clerk of Court